**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| JUXTACOMM-TEXAS SOFTWARE, LLC | § § | |
| PLAINTIFF, | § § | |
| v. | § § | Civil Action No. 6:10-CV-00011-LED |
| AXWAY, INC., ET AL. | § § | **JURY DEMAND** |
| DEFENDANTS. | § § | |

**PLAINTIFF JUXTACOMM'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' CLAIMS OF INEQUITABLE CONDUCT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. STATEMENT OF ISSUE TO BE DECIDED BY THE COURT .........................................2

III. UNDISPUTED MATERIAL FACTS ....................................................................................3

IV. ARGUMENT..........................................................................................................................9

    A. Summary Judgment Standard ....................................................................................9

    B. There was no inequitable conduct because no material information was withheld and there was no intent to deceive ............................................................9

        1. The Court's Claim Construction Order and other related materials were submitted to the PTO on October 30, 2009.......................................10

        2. Prior Art Materials were submitted to the PTO on January 7, 2010..........10

            a. *Vitria and Pervasive's claims concerning Data Junction prior art*........................................................................................11

            b. *Vitria's remaining claims concerning Sagent DataMart, Informatica's Power Mart, and Ascential's DataStage prior art*........................................................................................................11

            c. *Miscellaneous Allegations of Inequitable Conduct* .......................13

        3. Materiality...................................................................................................14

        4. Intent ...........................................................................................................14

V. CONCLUSION.....................................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...................................................................................................................8

*ATD Corp. v. Lydall, Inc.*,
   159 F.3d 534 (Fed. Cir. 1998)....................................................................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...................................................................................................................8

*Cordis Corp. v. Boston Scientific Corp*,
   -- F.3d ----, 2011 WL 4470563, *10 (Fed. Cir. September 28, 2011)..................................2, 15

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   -- F.3d ---, 2011 WL 2028255 (Fed. Cir. May 25, 2011) ..........................................1, 2, 14, 15

RULES

Fed. R. Civ. P. 56(c) .......................................................................................................................8

REGULATIONS

37 C.F.R. 1.97 ................................................................................................................................4

37 C.F.R. § 1.555/1.565 .........................................................................................................3, 4, 6, 9

Plaintiff JuxtaComm-Texas Software, LLC ("JuxtaComm") respectfully moves this Court to grant JuxtaComm's motion for summary judgment on Defendants' claims of inequitable conduct.

## I. INTRODUCTION

Summary judgment should be entered on Defendants' inequitable conduct claims because they are demonstrably false. The sole common allegation amongst the Defendants who have pleaded inequitable conduct—SAS, Dataflux, Vitria, Ricoh, TIBCO, Lawson, and Pervasive—is a purported failure on the part of JuxtaComm to disclose *Markman* materials from *JuxtaComm I* to the Patent and Trademark Office ("PTO") in successive reexamination proceedings initiated after the commencement of *JuxtaComm I*.[1] However, the undisputed evidence establishes that JuxtaComm disclosed to the PTO the very *Markman* materials alleged to have been withheld.

Pervasive and Vitria additionally allege that JuxtaComm intentionally withheld certain prior art materials from the PTO, but the evidence demonstrates that JuxtaComm has in fact disclosed so much of those materials as it is permitted to disclose under this Court's protective orders in this case and in *JuxtaComm I*. The only materials that remain undisclosed are protected, confidential materials for which the producing parties have not consented to disclosure.

Further, regarding any non-disclosure or allegedly late disclosure, the documents at issue fail to satisfy the "but for" standard for materiality applicable to such claims under the Federal Circuit's en banc decision in *Therasense, Inc. v. Becton, Dickinson and Co.*, Nos. 2008-1511, 2008-1512, 2008-1513, 2008-1514, 2008-1595, -- F.3d ---, 2011 WL 2028255, *16 (Fed. Cir.

---

[1] *JuxtaComm I* refers to *JuxtaComm Technologies, Inc. v. Ascential Software Corporation, et al.* Civil Action No. 2:07-CV-359 LED. JuxtaComm Technologies Inc., was the patentee and plaintiff in *JuxtaComm I*. In the current action, the plaintiff is JuxtaComm-Texas Software. JuxtaComm-Texas Software is the exclusive licensee of JuxtaComm Technologies Inc. Both entities are referred to as JuxtaComm for purposes of this motion.

May 25, 2011). In light of the evidence, it cannot be genuinely contended that the PTO would have reached a different result in the reexamination proceedings and rejected the '662 patent claims based on these materials.

In any event, there is no evidence establishing a fact issue on the intent element of inequitable conduct. The Federal Circuit requires that specific intent to deceive be the single most reasonable inference able to be drawn from the evidence. *Id*. at *10. Further, such evidence must "unequivocally demonstrate specific intent to deceive." *See Cordis Corp. v. Boston Scientific Corp*., Nos. 2010-1311, 2010-1316, -- F.3d ----, 2011 WL 4470563, *10 (Fed. Cir. September 28, 2011). No such unequivocal evidence of specific intent to deceive is supportable here.

## II. STATEMENT OF ISSUE TO BE DECIDED BY THE COURT

Should the Court grant partial summary judgment dismissing Defendants' inequitable conduct defense when the undisputed facts show that:

i. With respect to the sole common allegation of the Defendants, JuxtaComm did submit to the PTO the materials alleged to have been withheld.

ii. With respect to Pervasive and Vitria's additional allegations of inequitable conduct, JuxtaComm did make affirmative attempts to obtain consent to disclose materials covered by the protective order in *JuxtaComm I*, and much of those materials were submitted to the PTO after consent was obtained from the producing parties.

iii. The PTO considered the vast majority of the materials allegedly withheld, yet made no rejection of any claim of the '662 patent based on those materials.

      iv.      JuxtaComm has disclosed voluminous prior art and other information in the two reexamination proceedings and has at all times acted in good faith efforts to fully comply with its duty of disclosure to the PTO.

## III. UNDISPUTED MATERIAL FACTS

This motion is based on the Defendants' failure to point to any evidence that would establish the essential elements of their affirmative defense of inequitable conduct. The material facts are primarily Defendants' unsupported allegations and otherwise come from the patent file wrappers.

### ALLEGATIONS AND RELATED FACTS

1. Defendants SAS, DataFlux, Lawson, Ricoh, TIBCO, and Vitria allege that JuxtaComm failed to disclose claim construction materials from *JuxtaComm I*, including the Court's claim construction order, the *Markman* hearing transcript, and the parties' claim construction briefs. *See, e.g.,* SAS' First Amended Answer, Affirmative Defenses & Counterclaims (Dkt. No. 433), at ¶ 65.

2. Contrary to Defendants' allegations, on October 30, 2009, JuxtaComm submitted all such *Markman* materials from *JuxtaComm I* to the PTO during the pendency of the first reexamination of the '662 patent, including the precise *Markman* order from *JuxtaComm I* that forms the core of Defendants' inequitable conduct claims. *See* Declaration of Kirt S. O'Neill ("O'Neill Decl."), Exhibit A (Submission Under 37 C.F.R. § 1.555/1.565 In Ex Parte Reexamination U.S. Patent No. 6,195,662, dated October 30, 2009, at p. JXTS01058780 as "Memorandum Opinion dated 07/14/2009"); *see also* O'Neill Decl., Exhibit B (PTO's Electronic Acknowledgement Receipt of the materials submitted, dated October 30, 2009). That submission further included the *Markman* hearing transcript from *JuxtaComm I*, all claim

3

construction briefs from *JuxtaComm I*, and other related claim construction documents. *See* O'Neill Decl., Exhibit A, at p. JXTS01058781.

3. Defendant Pervasive alleges that JuxtaComm did not disclose to the PTO information acquired during *JuxtaComm I* as to certain "Data Junction" prior art, including the deposition testimony of Michael Hoskins (Pervasive's Product Manager for Data Junction) and manuals related to Data Junction products. *See* Pervasive's Third Amended Answer, Affirmative Defenses & Counterclaims (Dkt. No. 435), at pp. 9-13.

4. Contrary to Pervasive's allegations, JuxtaComm did disclose to the PTO all the information in its possession concerning Data Junction prior art. Those materials were provided to the PTO on January 7, 2010 in a submission that was ***sealed***[2] to protect those portions designated Confidential or Highly Confidential under this Court's protective order in *JuxtaComm I* and included the deposition transcript of Michael Hoskins as well as the relevant deposition exhibits which included various Data Junction User Guides. *See* O'Neill Decl., Exhibit C (Submission Under 37 C.F.R. § 1.555/1.565 In Ex Parte Reexamination of U.S. Patent No. 6,195,662, dated January 7, 2010, at p. JXTS01058873). The Data Junction materials were later resubmitted to the PTO in an ***unsealed*** submission immediately after Pervasive's counsel gave written permission to JuxtaComm to submit the materials unsealed. *See* O'Neill Decl., Exhibit D (February 28, 2011 letter from Pervasive's counsel, Stacy L. Zoern, authorizing disclosure of Hoskins deposition transcript and related materials); O'Neill, Decl., Exhibit E, May 19, 2011, Information Disclosure Statement, dated May 19, 2011, at p. JXTS01158265). In addition,

---

[2] The submission consisted of seven boxes of materials from the *JuxtaComm I* litigation, all of which was sealed in accordance with PTO rules (e.g., MPEP § 724.02) designed specifically to accommodate such submissions while preserving the confidentiality of materials covered by district court protective orders. Together with the seven-box sealed submission, JuxtaComm filed a "Petition for Expungement of Protective Order Materials Under 37 C.F.R. § 1.59(B)" (O'Neill Decl., Exhibit G) in accordance with PTO regulations to further ensure that the materials would not be part of the publicly available portion of the reexamination record.

JuxtaComm submitted numerous additional references on the Data Junction prior art. *See* O'Neill Decl., Exhibit F (Information Disclosure Statement Under 37 C.F.R. 1.97, dated December 21, 2010, at pp. JXTS01144146, JXTS01144151 JXTS01144152).

5. Defendant Vitria alleges that JuxtaComm failed to submit deposition materials of non-party Sagent Software personnel, namely, Vladimir Gorelik and John Zicker. In addition, Vitria alleges JuxtaComm did not submit its infringement contentions for the PowerMart and DataStage products. *See* Vitria's Amended Answer and Counterclaims, ¶¶ 75-91.

6. With respect to the Gorelik and Zicker depositions, JuxtaComm submitted the transcript of both depositions, along with relevant exhibits, as part of the aforementioned comprehensive, sealed disclosure of *JuxtaComm I* litigation materials to the PTO on January 7, 2010. *See* O'Neill Decl., Exhibit C, at pp. JXTS01058870-72, JXTS01058906-07, JXTS01058909. However, because of complaints from numerous defendants in *JuxtaComm I* that the sealing of the submission was inadequate to protect the confidentiality of the deposition transcripts and other litigation documents designated pursuant to the protective order in *JuxtaComm I*, JuxtaComm was forced to withdraw those materials from the PTO. *See, e.g.*, O'Neill Decl., Exhibit H (January 13, 2010 Letter from Microsoft's counsel alleging violation of Protective Order and urging immediate steps to obtain return of protected material and threatening liability for damages); Exhibit I (January 14, 2010 Letter from IBM's counsel alleging violation of protective order and urging immediate steps to obtain return of documents); Exhibit J (Request by Patent Holder to Return or Destroy Confidential Information without Consideration, submitted January 29, 2010); Exhibit K (PTO's decision granting petitions to return or destroy information filed under seal).

7. Subsequent to JuxtaComm's forced withdrawal of the litigation materials submitted to the PTO under seal on January 7, 2010, JuxtaComm repeatedly sought permission to disclose these confidential materials from the various parties who made the confidentiality designations in *JuxtaComm I* and in the instant case. *See* O'Neill Decl., Exhibit L (February 18, 2011 letter to counsel for Software AG requesting permission to production of Gorelik deposition); Exhibit M (February 24, 2011 letter to counsel for Informatica, Microsoft, and Vitria requesting permission to produce Gorelik deposition transcript); Exhibit N (April 11, 2011 letter renewing request to counsel for Informatica and Vitria for permission to produce all deposition transcripts from *JuxtaComm I*); Exhibit O (April 21, 2011 letter to counsel for Software AG renewing request for permission to produce Gorelik deposition and other prior litigation materials). Vitria is well aware of these efforts—indeed, its counsel in the present litigation (Ryan Tyz and other lawyers from the Fenwick & West firm) was also counsel to Informatica in the prior litigation and has been the recipient of multiple letters from JuxtaComm on this issue. Despite these repeated requests, JuxtaComm has not been granted permission to disclose the documents by the parties who designated them under the *JuxtaComm I* protective order. Instead, Fenwick & West stands on its pleading of inequitable conduct for failure to disclose to the PTO the very materials that Fenwick & West designated confidential under this Court's protective order in *JuxtaComm I*, while refusing to even respond to JuxtaComm's written requests to Fenwick & West for permission to disclose the materials.

8. With respect to the allegations regarding PowerMart, contrary to Vitria's contention, JuxtaComm submitted infringement contentions for Informatica products, including PowerMart, as part of its submission to the PTO on October 30, 2009. *See* O'Neill Decl., Exhibit A, at JXTS01058783.

6

9. JuxtaComm has also disclosed the following additional references to the PTO regarding the PowerMart prior art:

- Defendants' Prior Art Chart for PowerMart 3.0 from *JuxtaComm I*. O'Neill Declaration, Exhibit P (Submission under 37 C.F.R. § 1.555/1.565 in Ex Parte Reexamination of U.S. Patent No. 6,195,662, at p. 4, submitted January 7, 2010).

- Infomatica, PowerMart Designer's Guide, Version 3.0, 1996. O'Neill Decl., Exhibit C (Information Disclosure Statement, at JXTS01058934, submitted January 7, 2010.

- Informatica, PowerMart Installation and Configuration Guide, Version 3.0, 1996. O'Neill Decl., Exhibit C (Information Disclosure Statement, at JXTS01058934, submitted January 7, 2010).

- PowerMart Concepts Guide, Version 3.0, Release 3.5, Informatica Corporation. O'Neill Decl., Exhibit Q (December 21, 2010, Information Disclosure Statement, at JXTS01160981 with notation from examiner indicating she considered the reference on April 28, 2011).

- Informatica Corporation, PowerMart Server 4.0 Architecture, as of January 30, 1997. O'Neill Decl., Exhibit R (Information Disclosure Statement, at JXTS01058950, submitted January 7, 2010).

10. With respect to the alleged DataStage prior art, JuxtaComm submitted the invalidity contentions charting the DataStage product as drafted by Defendants in *JuxtaComm I*. *See* O'Neill Decl., Exhibit R (Information Disclosure Statement, at JXTS01058946, JXTS01058960). JuxtaComm also included extensive DataStage materials as part of the January 7, 2010 sealed submission to the PTO discussed above. *See* O'Neill Decl., Exhibit C (Information Disclosure Statement of Applicant, dated January 7, 2010, at pp. JXTS01058863, JXTS01058866, JXTS01058870, JXTS01058874, JXTS01058876).

Further, JuxtaComm submitted the following references discussing the DataStage system on January 7, 2010, each of which was considered by the PTO:

- "DataStage Architecture Overview," 1996

- "VMARK Software Debuts DataStage at DB/Expo, Booth #135," 12/3/96, http://web.archive.org/web/19971009060338/www.vmark.com/datastage/dsdebut.htm

*See* O'Neill Decl., Exhibit Q (Information Disclosure Statement with notes from examiner stating materials considered on April 28, 2011, at p. JXTS01160972).

## PATENT-IN-SUIT AND FILE WRAPPER

11. U.S. Patent No. 6,195,662 ("the '662 patent) issued on February 27, 2001, from an application filed on June 26, 1998. The provisional patent application for what ultimately issued as the '662 patent was filed on June 27, 1997.

12. On August 17, 2007, JuxtaComm Technologies, Inc. filed suit against Microsoft, IBM, Informatica, Software AG, and numerous other entities for infringement of the '662 patent.

13. A request for ex parte reexamination of the '662 patent was filed by Microsoft on May 5, 2009 and subsequently granted in part by the PTO on July 31, 2009, with the reexamination proceeding before the PTO as SN 90/010,526. On December 15, 2009, the United States Trademark and Patent Office issued an official Office Action in Ex Parte Reexamination which confirmed the patentability of all claims of the '662 patent except Claim 13. A reexamination certificate issued on July 27, 2010. *See* O'Neill Decl., Exhibit S (Ex Parte Reexamination Certificate).

14. The instant action was filed on January 21, 2010, promptly after full settlement and dismissal of all claims and counterclaims in *JuxtaComm I*.

15. A second request for ex parte reexamination of the '662 patent was filed by SAS on October 6, 2010. That request was granted on November 8, 2010, and that proceeding is ongoing.

16. Over the course of the reexamination proceedings, JuxtaComm has submitted numerous documents disclosing all of the claim construction materials and materials relating to alleged prior art systems that Defendants allege that JuxtaComm and its counsel failed to disclose to the PTO.

## IV. ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment may thus be granted when no "reasonable jury could return a verdict form the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, a judge must view the evidence presented through the prism of the substantive evidentiary burden—here, clear and convincing evidence. *Id.* at 254.

Summary judgment on inequitable conduct may be granted when, "drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant cannot prevail." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998) (affirming summary judgment of no inequitable conduct). A party moving for summary judgment may establish that the other party has the burden of proof at trial and has failed to make a showing sufficient to establish the existence of an element essential to its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. There was no inequitable conduct because no material information was withheld and there was no intent to deceive.

Defendants' allegations are simply untrue. They allege counsel for JuxtaComm failed to submit various materials to the PTO in one or both reexamination proceedings, or that

JuxtaComm intentionally delayed disclosure. But in fact, the documents upon which Defendants base their inequitable conduct claims were timely submitted to the PTO.

### 1. The Court's Claim Construction Order and other related materials were submitted to the PTO on October 30, 2009.

In the sole common allegation of inequitable conduct amongst Defendants SAS, DataFlux, Lawson, Ricoh, TIBCO, and Vitria, Defendants contend JuxtaComm intentionally withheld material information in the form of the *JuxtaComm I* Memorandum Opinion and Order of July 13, 2009 construing the '662 patent.[3] *See, e.g.*, SAS's First Amended Answer, Affirmative Defense & Counterclaims (Dkt. No. 433), at pg. 29-30. But all *Markman* materials from *JuxtaComm I* were in fact submitted to the PTO on October 30, 2009. This included the very claim construction order that is the centerpiece of the Defendants' inequitable conduct claim. *See* O'Neill Decl., Exhibit A (Submission Under 37 C.F.R. § 1.555/1.565 in Ex Parte Reexamination of U.S. Patent No. 6,195,662, Item 4 listed as "Memorandum Opinion dated 07/14/2009") and Exhibit B (PTO's Electronic Acknowledgement Receipt of the materials submitted). That submission also included the *Markman* hearing transcript and all claim construction briefing. *See* O'Neill Decl., Exhibit A at p. JXTS01058781. Moreover, there can be no question that the submission was timely because it preceded the PTO examiner's first Office Action (December 15, 2009) by more than *six weeks*.

### 2. Prior Art Materials were submitted to the PTO on January 7, 2010.

Similarly, the allegations by Pervasive and Vitria that JuxtaComm failed to disclose to the PTO documents related to JuxtaComm's litigation positions with respect to multiple prior art references are false because the documents at issue were disclosed.

---

[3] Pervasive did not make a similar allegation.

       a.  *Vitria and Pervasive's claims concerning Data Junction prior art*

Pervasive alleges that JuxtaComm did not disclose information acquired during *JuxtaComm I* as to certain "Data Junction" prior art, particularly including the deposition testimony of Michael Hoskins (Pervasive's Data Junction Product Manager) and manuals for the Data Junction products. *See* Pervasive's Third Amended Answer, Affirmative Defenses & Counterclaims (Dkt. No. 435), at pp. 9-13.

As set forth in the factual allegations above, JuxtaComm did disclose to the PTO all the information in its possession concerning Data Junction prior art in its January 7, 2010 sealed submission. The submission included the deposition transcript of Michael Hoskins, as well as the relevant deposition exhibits which included various Data Junction User Guides. *See supra*, Section III, ¶ 4.

While JuxtaComm was subsequently forced to withdraw the entire January 7 sealed submission under pressure from the *JuxtaComm I* defendants, the Data Junction materials were later resubmitted to the PTO in an unsealed submission in the current reexamination proceeding after Pervasive's counsel waived the confidentiality of those materials. The PTO considered those Data Junction materials and made no rejection of any claim based on those materials. *See* O'Neill Decl. at Exhibit Q (Information Disclosure Statement, with notes from examiner stating materials considered on April 28, 2011, at pp. JXTS01160975, JXTS01160981). In light of these facts, it cannot be genuinely contended that JuxtaComm has intentionally withheld materials relating to the alleged Data Junction prior art.

       b.  *Vitria's remaining claims concerning Sagent DataMart, Informatica's Power Mart, and Ascential's DataStage prior art*

Defendant Vitria alleges that JuxtaComm failed to disclose, or belatedly disclosed, certain materials concerning other prior art references asserted by the defendants in *JuxtaComm I*.

11

Specifically, Vitria faults JuxtaComm for failing to submit deposition materials of Sagent Software personnel (namely, Mr. Gorelik and Mr. Zicker), and for not submitting JuxtaComm's infringement contentions for certain versions of the PowerMart and DataStage products. *See* Vitria's Amended Answer and Counterclaims (Dkt. No. 442), ¶¶ 75-91.

As set forth above, with respect to the Gorelik and Zicker depositions, JuxtaComm submitted the transcript of both depositions along with relevant exhibits as part of the comprehensive sealed PTO submission on January 7, 2010. After being forced to withdraw the materials from the record in the first reexamination proceeding, JuxtaComm sought permission to disclose these confidential litigation materials in the second reexamination. *See supra*, Section III at ¶¶ 6-7. The Gorelik and Zicker deposition transcripts remain protected by this Court's protective order in *JuxtaComm I*, and the proprietors of that confidential information have either refused JuxtaComm's repeated requests for permission to submit the transcripts to the PTO, or they have ignored JuxtaComm's requests—as in the case of the Fenwick & West lawyers who represented the proponent of the Sagent prior art in *JuxtaComm I* (Informatica) and also the proponent of that prior art in the present case (Vitria).

Aside from the Gorelik and Zicker transcripts, JuxtaComm has submitted to the PTO numerous other documents regarding the alleged Sagent prior art system, including:

- Design Studio User's Guide, Sagent Technology, Inc., Release 1.0 Beta 2, September 16, 1996

- Sagent Technology, Inc. Version One Product Requirements, August 1995

- Declaration of John Zicker re Authentication of Computer Code for Sagent 1.0 and Documents Establishing the Sale of the Code for Sagent 1.0, Informatica Corporation v. Business Objects Data Integration, inc., U.S. District Court, N.D. Ca., SF Division, Case No. C-02-3378-JSW (JL)

- File List of Sagent Source Code

*See* O'Neill Decl., Exhibit C, at JXTS01058870-72. In light of these facts, it cannot be genuinely contended that JuxtaComm has intentionally withheld the Gorelik and Zicker transcripts from the PTO, or any other materials relating to Sagent prior art.

Similarly, JuxtaComm did not intentionally withhold any material information with respect to PowerMart and DataStage. As set forth above, JuxtaComm has submitted to the PTO the *JuxtaComm I* infringement contentions for PowerMart, along with numerous additional references on the PowerMart prior art. *See supra*, Section III, ¶ 9. Similarly, JuxtaComm has submitted extensive references detailing the DataStage prior art. *See supra*, Section III, ¶ 10.

These fulsome disclosures with respect to the prior art systems provide information equivalent to any documents that Vitria alleges were withheld. Accordingly, as discussed further below, Defendants have failed to raise a genuine issue of fact as to the baseline requirement of materiality with respect to any alleged non-disclosure.

### c. *Miscellaneous Allegations of Inequitable Conduct*

Vitria makes one additional incidental allegation which clearly does not rise to the level of inequitable conduct as a matter of law. Vitria takes a nonsensical position that JuxtaComm has taken inconsistent positions regarding whether a buffer generally can meet the data bag limitation. *See* Vitria's Amended Answer and Counterclaims, ¶ 92-101. Aside from being inaccurate, JuxtaComm never took a position as to whether a "buffer" generally—as opposed to a specific buffer and its specific contents in a specific prior art system—always or never meets the data bag limitation. In any event, Defendants are unable to demonstrate a fact issue as to the materiality of any statements made about "buffers," according to the Federal Circuit's new standard for materiality set forth below.

### 3. Materiality

Even if Defendants were able to identify any material item of information that was not disclosed, or was disclosed "late," there is no evidence that any such information would meet the Federal Circuit's new and stringent "but for" standard announced in the recent en banc decision in *Therasense, Inc. v. Becton, Dickinson and Co.*, -- F.3d ---, 2011 WL 2028255, *16 (Fed. Cir. May 25, 2011). Under *Therasense*, to find inequitable conduct, a court must find the PTO would not have allowed a claim if it had been aware of the undisclosed reference or prior art. *Id*. at *11. As discussed above, JuxtaComm made extensive disclosures with respect to all the relevant prior art systems over the course of two reexaminations of the '662 patent. These disclosures indisputably gave the PTO a complete picture of the relevant prior art systems at issue. As such, the Defendants cannot establish that any of the alleged non-disclosures resulted in the survival in reexamination of a claim that would have been rejected but for the alleged nondisclosure. Similarly, any alleged position JuxtaComm took with regard to whether a "buffer" generally can meet the data bag limitation of the '662 patent could not, in the face of the extensive disclosures discussed above, constitute material information.

### 4. Intent

Finally, even if Defendants could point to any evidence that a material document or other information was withheld from the PTO, there is no fact issue that JuxtaComm had the requisite specific intent to deceive the PTO.

The en banc *Therasense* court also raised the bar for establishing intent. Before *Therasense*, there was some uncertainty about the level of intent needed to establish culpability for violations of the duty of candor. The *Therasense* court clarified the requisite specific intent to deceive the PTO: "[T]the accused infringer must prove by clear and convincing evidence that the

applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id*. at *9. Further, the court emphasized that, to meet the clear and convincing evidence standard based on indirect and circumstantial evidence of intent, specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Id*. at *10. The Federal Circuit has more recently explained that the evidence of specific intent to deceive must be "unequivocal." *See Cordis Corp*., 2011 WL 4470563, at *10.

In the present case, there is no evidence establishing a fact issue on intent whatsoever. To the contrary, JuxtaComm has submitted voluminous prior art materials and related information to the PTO, spanning two separate pieces of multi-defendant litigation and two reexamination proceedings. Even if Defendants could demonstrate a fact issue that JuxtaComm somehow failed to disclose any material information to the PTO—and they cannot—there is no evidence demonstrating a genuine factual dispute on intent, and certainly no "unequivocal" evidence of specific intent to deceive. Indeed, the only reasonable inference is that any nondisclosure was the result of simple oversight resulting from the deluge of prior art and other litigation materials created by the defendants in *JuxtaComm I* and this case.

## V. CONCLUSION

The incontrovertible documentary evidence demonstrates that the vast majority of the materials alleged to have been withheld from the PTO were in fact disclosed. And there is no evidence to support any inference of intent to deceive the PTO with respect to any item of material information that Defendants may be able to establish was not disclosed. Accordingly, JuxtaComm respectfully requests that the Court grant summary judgment of no inequitable conduct.

Dated: October 11, 2011						Respectfully Submitted,

**Akin Gump Strauss Hauer & Feld LLP**

*/s/ R. Laurence Macon*
R. LAURENCE MACON
State Bar No. 12787500
lmacon@akingump.com
KIRT S. O'NEILL
State Bar No. 00788147
koneill@akingump.com
MELANIE G. COWART
State Bar No. 04920100
mcowart@akingump.com
300 Convent Street, Suite 1600
San Antonio, Texas 78205-3732
Telephone: (210) 281-7000
Fax: (210) 224-2035

MICHAEL L. KIKLIS
District of Columbia Bar No. 462690
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

– and –

**LOCAL COUNSEL**

T. JOHN WARD, JR.
**WARD & SMITH LAW FIRM**
P.O. Box 1231
Longview, Texas 75606-1231
Telephone: (903) 757-6400
Fax: (903) 757-2323
jw@jwfirm.com

**ATTORNEYS FOR PLAINTIFF
JUXTACOMM-TEXAS SOFTWARE, LLC**

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

   The undersigned certifies that under Local Rule CV-5(a)(7)(A), Exhibits C, O and R to the foregoing document are filed under seal pursuant to the Protective Order (Dkt. No. 404), entered in this case.

*/s/ R. Laurence Macon*
R. LAURENCE MACON

**CERTIFICATE OF SERVICE**

   The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this Motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1). Pursuant to Fed. R. Civ. P. 5(a)-(d) and Local Rule CV-5(b)(2), all other counsel or record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 11th day of October, 2011.

*/s/ R. Laurence Macon*
R. LAURENCE MACON