IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JUXTACOMM-TEXAS SOFTWARE, LLC | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | Civil Action No. 6:10-CV-00011-LED |
| | § | |
| AXWAY, INC., et al., | § | |
| | § | |
| DEFENDANTS. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR A CASE MANAGEMENT CONFERENCE**

The opposition of Defendants Lawson Software, Inc. and Lawson Software Americas, Inc. (collectively "Lawson") to Plaintiff's Emergency Motion for a Case Management Conference (hereafter, "Opposition") attempts to mask the basic fact that Lawson failed to produce the Accused Products in a form capable of rendering them fully functional, despite ten months of delay. Further, Lawson's attempt to cast its dilatory tactics as some sort of wrongdoing by JuxtaComm, is a clear mischaracterization of the facts. With trial two months away, JuxtaComm can wait no longer. As such, JuxtaComm requests a Case Management Conference so that this dispute can be resolved and the parties can continue to prepare for the January 9, 2012 trial date.

**I.    LAWSON HAS NOT PRODUCED THE ACCUSED PRODUCTS IN A MANNER THAT IS CAPABLE OF RENDERING THEM FULLY FUNCTIONAL**

Lawson's Opposition conveniently ignores one simple fact – that Lawson has yet to produce fully functional copies of the Accused Products in the manner Lawson would provide them to a customer. This has been JuxtaComm's only request since December 2010.[1] Instead,

---
[1] *See* Dkt. No. 744 (Plaintiff's Motion) at Ex. A.

Lawson's Accused Product production has been piecemeal, and despite numerous productions of parts and components of the Accused Products, JuxtaComm continues to be without components needed for fully operational copies of the Accused Products (*e.g.,* a COBOL Compiler). Such a piecemeal production cannot be what Lawson provides its customers; otherwise, it would no longer be in business. Thus, Lawson's assertions in its Opposition of having produced all of the requisite software are incorrect.

Had Lawson produced the Accused Products to JuxtaComm in the same form it does for its customers, JuxtaComm would not have had to expend significant effort and expense, and indeed, this motion would not have been necessary. First, Lawson ignored JuxtaComm's initial request for more than four months. Then, Lawson failed to meet its own self-imposed production deadline, and subsequently ignored JuxtaComm's repeated communications.[2] Thereafter, Lawson produced a disc with a random collection of executable files that contained no labeling or indication of the product versions or components being produced.[3] The production did not contain even the most basic of information, such as an identification of the compatible operating system or confirmation that each component was designed to operate on the same operating system.[4] After retaining a consultant and expending significant time and money trying to decipher the hodgepodge collection of files, JuxtaComm realized that files were missing, and conveyed such to Lawson in detail.[5] After numerous communications detailing the deficiencies and problems encountered during the installation process, Lawson produced for the

---

[2] *See* id.; Dkt. No. 744 (Plaintiff's Motion) at Ex. C; Dkt. No. 744 (Plaintiff's Motion) at Ex. D.

[3] Dkt. No. 773 (Opposition) at Ex. 1.

[4] *Id.*

[5] Dkt. No. 744 (Plaintiff's Motion) at Ex. E.

first time the installation guides relevant to the files it had produced months earlier.[6] After further investigation and less than a month later, JuxtaComm again notified Lawson that the Accused Product production appeared to be missing necessary components.[7] Lawson followed this up with two more productions of random, unlabeled files.[8] This production of files still failed to resolve the issue and JuxtaComm promptly let Lawson know it.[9] Indeed, to date, files remain missing from Lawson's production of the Accused Products.[10] JuxtaComm should not be forced to engage in this merry-go-round, go-nowhere process any longer.

After months on the piecemeal-production merry-go-round, JuxtaComm offered alternative methods for Lawson to comply with its discovery obligations, for example, by providing access to an operational testing environment or remote access to functional versions of the Accused Products.[11] JuxtaComm suggested this as an easy alternative for Lawson to comply with its discovery obligations while allowing JuxtaComm to avoid any further expense and delay. This was also necessary given that the end of the fact discovery period was drawing near. Lawson's stonewall response – that no computer exists with the Accused Products installed that JuxtaComm can access – seems highly improbable. Indeed, remote access is commonplace and has been used before in this case.

Lawson has a legal duty to produce the requested executables. The Accused Products are not only directly relevant to JuxtaComm's infringement claims, but more generally, they are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

---

[6] Dkt. No. 773 (Opposition) at Ex..

[7] Dkt. No. 744 (Plaintiff's Motion) at Ex. G.

[8] Dkt. No. 773 (Opposition) at Ex. 4; Dkt. No. 773 (Opposition) at Ex..

[9] *See e.g.,* Dkt. No. 744 (Plaintiff's Motion) at Ex. I.

[10] Ex. 1 (Decl. of Elgin Lee).

Lawson's Opposition impermissibly <u>asks JuxtaComm to identify</u> the missing required software components <u>that Lawson gives to its customers</u> in order to render the Accused Products functional. Clearly, Lawson is the party that (1) possesses this information and (2) bears the burden of producing the requested Accused Products in a complete form. JuxtaComm cannot possibly know what files are missing until the installation process fails, and even then, what is missing may not be apparent. The burden of producing the Accused Products is on Lawson, not JuxtaComm.

Lawson attempts to conflate the issues at hand by mentioning that JuxtaComm's expert, Dr. Walter Rudd, cited to a Lawson XML file in his expert report. This is irrelevant, as that file comes from the single piece of the Accused Products that JuxtaComm was able to render operational – the graphical user interface (*i.e.,* Designer). Indeed, Dr. Rudd has been unable to use a fully functional version of the Accused Products.[12]

Further, Lawson's assertion that JuxtaComm has not been diligent is simply false and ignores the over 110 hours and several months that JuxtaComm spent attempting to install – in fact, reverse engineer – the haphazard production of unmarked files.[13] Moreover, after all of this undue expense and hardship on JuxtaComm, the engineer enlisted to help install the Accused Products is still missing at least the required COBOL Compiler. Even after production of that specific file, JuxtaComm will not know if other files are missing until it spends more time and expense attempting another installation, which is precisely why JuxtaComm has requested access to a Lawson computer with the Accused Products already installed.[14]

---

[11] *See e.g.,* Dkt. No. 744 (Plaintiff's Motion) at Ex. E; Dkt. No. 744 (Plaintiff's Motion) at Ex. F; Dkt. No. 744 (Plaintiff's Motion) at Ex. I.

[12] Ex. 2 (Dep. Tr. of Walter G. Rudd at 161:18-23).

[13] Ex. 1 (Decl. of Elgin Lee).

[14] Ex. 1.

Finally, Lawson inexplicably claims that JuxtaComm was required to depose Lawson personnel just to receive a complete production and install a functional version of the Accused Products. That is unreasonable at best, given that (1) JuxtaComm should not be forced to depose a witness to receive what it is already entitled to and (2) when JuxtaComm deposed Lawson's witness in June 2011, JuxtaComm was still operating under the assumption that Lawson had complied with its discovery obligations and assurances of a complete production. Indeed, Lawson had just made representations to JuxtaComm that it was "in the process of collecting executables and will supplement [its] production accordingly."[15] JuxtaComm could not have known at that time that Lawson was going to spend ten months hindering the discovery process.

## II. JUXTACOMM HAS COMPLIED WITH THE LOCAL RULES

In compliance with Local Rule CV-7(h), JuxtaComm made meet and confer requests on at least July 20, 2011 and October 4, 2011, to which Lawson did not reply.[16] This conduct makes it appear as though Lawson thought it could evade its discovery obligations if it simply allowed the clock to run out on fact discovery, which ended on October 7, 2011. Indeed, as further example of Lawson's tactics, it ignored the two renewed offers for a meet and confer JuxtaComm made even after filing of this Motion.[17] Given that discovery closed with no response from Lawson, JuxtaComm had no other option but to seek the Court's assistance.

## III. CONCLUSION

For the foregoing reasons, JuxtaComm's requests for a Case Management Conference for the purpose of obtaining an Order directing Lawson to grant JuxtaComm access (either direct or remote) to functioning versions of the Accused Products must be granted.

---

[15] Ex. 3.

[16] Dkt. No. 744 (Plaintiff's Motion) at Ex. G; Dkt. No. 744 (Plaintiff's Motion) at Ex. I.

[17] Ex. 4; Ex. 5.

Dated:  November 7, 2011                    Respectfully Submitted,

**Akin Gump Strauss Hauer & Feld LLP**

_R. Laurence Macon_ (signature)

R. LAURENCE MACON
State Bar No. 12787500
lmacon@akingump.com
KIRT S. O'NEILL
State Bar No. 00788147
koneill@akingump.com
MELANIE G. COWART
State Bar No. 04920100
mcowart@akingump.com
300 Convent Street, Suite 1600
San Antonio, Texas 78205-3732
Telephone: (210) 281-7000
Fax: (210) 224-2035

MICHAEL L. KIKLIS
District of Columbia Bar No. 462690
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
Telephone: (202) 887-4000
Fax: (202) 887-4288

– and –

**LOCAL COUNSEL**

T. JOHN WARD, JR.
**WARD & SMITH LAW FIRM**
P.O. Box 1231
Longview, Texas 75606-1231
Telephone:  (903) 757-6400
Fax:  (903) 757-2323
jw@jwfirm.com

**ATTORNEYS FOR PLAINTIFF
JUXTACOMM-TEXAS SOFTWARE, LLC**

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

  The undersigned certifies that under Local Rule CV-5(a)(7)(A), that Exhibit 2 to the foregoing document is filed under seal pursuant to the Protective Order (Dkt. No. 404), entered in this case.

                _____
                R. LAURENCE MACON


**CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this Response was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1). Pursuant to Fed. R. Civ. P. 5(a)-(d) and Local Rule CV-5(b)(2), all other counsel or record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 7th day of November, 2011. All sealed documents were promptly served by electronic mail on counsel of record.

                _____
                R. LAURENCE MACON